# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DANNY'S CONSTRUCTION COMPANY, INC.; CITY OF CHICAGO, *ex rel* DANNY'S CONSTRUCTION COMPANY, <br><br>    Plaintiff, <br><br>  v. <br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, <br><br>    Defendant <br>  and Third-Party Plaintiff, <br><br>  v. <br><br>CARLO STEEL CORPORATION and THE CITY OF CHICAGO, <br><br>  Third-Party Defendants. | Case No. 05 C 4799 <br><br> Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

This case arises out of a construction project known as the O'Hare Terminal Facade and Circulation Enhancement Project (the "Project"). Plaintiff Danny's Construction Company, Inc. (hereinafter, "Danny's") sued Travelers Casualty and Surety Company of America (hereinafter, "Travelers") for payment on a performance and payment bond ("the Bond") issued in conjunction with the Project. Before the Court is Third-Party Defendant the City of Chicago's ("the City") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) or 12(b)(3). For the reasons stated

herein, the City's Motion to Dismiss under Rule 12(b)(6) is **granted**.

## I. BACKGROUND

Walsh Construction Company (hereinafter, "Walsh") entered into a contract with the City on January 13, 2003, (the "Contract") to provide materials and equipment and to perform services in connection with the Project. Walsh, as principal, and Travelers, as surety, furnished the Bond to the City pursuant to the Illinois Public Construction Bond Act (the "Act").

Walsh subcontracted a portion of the Project's steel fabrication and erection work to Carlo Steel Corporation (hereinafter, "Carlo"). Carlo, in turn, subcontracted with Danny's. As the Project progressed, Carlo continually failed to pay Danny's for extra work items, was delinquent in its payment for the base contract work, and eventually ceased making any payments to Danny's.

Danny's sued Travelers in Federal Court on August 19, 2005, for payment under the Bond of the amounts owed to Danny's by Carlo. Travelers in turn filed third-party claims against the City and Carlo. The City has now moved to dismiss the claims against it under Rule 12(b)(6), or in the event that motion is denied, under Rule 12(b)(3).

## II.  **ANALYSIS**

The purpose of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted).  On a 12(b)(6) motion, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true, views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993).  A court should not dismiss a complaint "unless it appears beyond all reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Travelers' third-party complaint against the City alleges that the City provided defective design plans and specifications for the Project, which caused delays and extra work that enlarged Travelers's exposure under the Bond.  Travelers contends that these alleged circumstances give it the right to seek funds from the City in the event that it is found liable to Danny's, both under implied indemnification theories and an unjust enrichment theory.

The City argues that suretyship law does not recognize any claim by a surety on an owner/obligee's funds and that, in any case, Travelers has failed to allege facts necessary to state

claims for implied indemnity and unjust enrichment. Although this Court declines to hold that a surety can never recover funds from its obligee, this Court agrees with the City that Travelers's implied indemnity and unjust enrichment claims are legally defective.

**A. Implied Indemnity**

In Counts II and III of Travelers's Amended Third-Party Complaint, Travelers seeks implied indemnity from the City for any funds it pays to Danny's on the Bond. Count II claims a right of indemnity based on the City's alleged breach of its implied warranty of design adequacy. Count III pursues indemnity based on the City's alleged negligence in furnishing defective plans.

As an initial matter, the City contends that Counts II and III articulate different causes of action – that Count II is for implied indemnity based on quasi-contract principles, while Count III is really for "active-passive" indemnity. Travelers insists that both Counts sound in implied indemnity based on quasi-contract principles. This Court agrees with Travelers that Counts II and III both sound in implied indemnity based on quasi-contract principles. The "active-passive" indemnity cause of action that the City argues Count III represents only applies where the would-be indemnitor and indemnitee are alleged joint tortfeasors. *See Kerschner v. Weiss & Co.*, 282 Ill. App. 3d 497, 505 (1st Dist. 1996). Here, there is no allegation that the City and Travelers

are jointly liable in tort.  Thus, since both Counts II and III allege facts under implied indemnity based on quasi-contract principles, this Court will address their adequacy together.

Under implied indemnity based on quasi-contract principles, "a promise to indemnify will be implied by law where a blameless party (the indemnitee) is derivatively liable to the plaintiff based upon the party's legal relationship with the one who actually caused the plaintiff's injury (the indemnitor)."  *Schulson v. D'Ancona and Pflaum LLC*, 354 Ill. App. 3d 572, 576 (1st Dist. 2004).  A third-party plaintiff invoking this cause of action must allege (1) a "pre-tort" relationship between the third-party plaintiff and the third-party defendant and (2) a qualitative distinction between the conduct of the third-party plaintiff and the third-party defendant."  *Kerschner*, 282 Ill. App. 3d at 503.

Consistent with the foregoing, implied indemnity based on quasi-contract principles is simply not a cause of action available to Travelers against the City.  Danny's suit against Travelers for payment on the Bond is not one in which Travelers could be held derivatively liable for a tort actually committed by someone else.  Instead, any liability of Travelers to Danny's would be liability on a contract, namely the Bond – a fact that Travelers expressly acknowledged in its brief.  (Travelers' Br. at p. 10.)  Implied indemnity based on quasi-contract principles is not available where the third-party plaintiff's potential liability in the underlying

action sounds in contract. *Schulson*, 354 Ill. App. 3d at 577.

Consequently, Travelers can allege no set of facts here that would entitle it to implied indemnity from the City of funds paid to Danny's on the Bond.

### B. Unjust Enrichment

Count IV of Travelers's third-party complaint seeks recovery from the City on an unjust enrichment theory of any funds Travelers pays to Danny's on the Bond. Unjust enrichment occurs when "one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and which *ex aequo et bono* belongs to another." *Bd. of Highway Comm'rs., Bloomington Twp. v. City of Bloomington*, 253 Ill. 164, 174 (1911).

Travelers argues that if it were held liable to Danny's based on Carlo's delinquency, which Travelers contends the City caused by issuing defective plans, then the City would unjustly retain the benefit of its contractors' extra work without having had to pay the contractors for it. This Court does not see, however, what benefit *Travelers* – as opposed to Danny's – would have conferred on the City. Travelers' bond liability to Danny's has no bearing on whether the City unjustly will retain the benefit of extra work performed by Danny's. Indeed, where a plaintiff seeks recovery of a benefit that was transferred to the defendant by a third party, courts have only found unjust enrichment in a few limited

situations: where (1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead; (2) the defendant procured the benefit from the third party through some type of wrongful conduct (like fraud); or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant. *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 161-62 (1989). This case presents none of these situations. Danny's services were not intended for Travelers. Travelers' allegations regarding the City's design adequacy do not rise to the level of fraud or similar wrongful conduct. And there appears no other reason to conclude that the surety on a construction payment bond has a better claim to the value of services performed by subcontractors than the owner for whom the work was performed.

In sum, whatever merit an unjust enrichment claim might or might not have as between the subcontractors, Walsh, and the City, it would impermissibly stretch the theory to apply it to the third party surety, Travelers. Based on the foregoing, Travelers can allege no facts here entitling it to recovery from the City for unjust enrichment.

### C. Equitable Considerations

Finally, although quasi-contract claims constitute actions at law, they are governed by principles of equity. *Bd. of Highway Comm'rs.*, 253 Ill. at 174. To this end, this Court here notes

that, contrary to Travelers's suggestion, equitable considerations weigh against Travelers's implied indemnity and unjust enrichment claims against the City.

To begin with, Travelers is a sophisticated surety and guaranty company that received compensation for undertaking the risk of being a surety on the Project. In this role, prior to entering into to the bond agreement, Travelers was free to – and presumably did – engage in robust underwriting of the risks the Project posed, including those related to the adequacy of the City's plans. *See 4 Philip L. Bruner & Patrick J. O'Connor, Bruner & O'Connor on Construction Law § 12.11 (2002)*. Travelers likewise could have negotiated for express indemnification from the City in anticipation of a dispute such as this one, which was far from unforseeable. *See Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 79 (1982)(noting protection afforded commercial parties by bargaining for express warranties); *Bethlehem Steel Corp. v. Chicago Eastern Corp.*, 863 F.2d 508, 518 (7th Cir. 1988)(noting that commercial law "allow[s] the parties to allocate the risk of loss between themselves through negotiation over implied and express warranties").

In any case, Travelers retains several remedial options. It is free to seek indemnification from Walsh under their express agreement. It is also free to seek subrogation to the interests of Danny's against Carlo (which it has done in Count I of its Amended

Third-Party Complaint). It could even attempt to subrogate to Walsh's interests against the City (although this potential remedy is admittedly less certain and could be subject to any limitations contained in City's contract with Walsh).

In sum, although Travelers's implied indemnity and unjust enrichment claims are legally deficient, equitable considerations also support their dismissal.

### III.  CONCLUSION

For the reasons stated herein, the City's Motion to Dismiss **is granted**. Counts II, III, and IV of Travelers's Amended Third-Party Complaint are hereby dismissed **with prejudice**.

**IT IS SO ORDERED.**

                                              _____
                                              Harry D. Leinenweber, Judge
                                              United States District Court

Dated:     3/7/2007