```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF ILLINOIS
              EASTERN DIVISION
```

| | |
|---|---|
| DANNY'S CONSTRUCTION COMPANY, INC.; CITY OF CHICAGO, *ex rel* DANNY'S CONSTRUCTION COMPANY,<br><br>  Plaintiff,<br><br>  v.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>  Defendant<br>  and Third-Party Plaintiff,<br><br>  v.<br><br>CARLO STEEL CORPORATION and THE CITY OF CHICAGO,<br><br>  Third-Party Defendants. | Case No. 05 C 4799<br><br>Hon. Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

This case involves steel erection and fabrication for some improvements at the O'Hare International Airport. The City of Chicago (the "City") entered into a contract with Walsh Construction Company (hereinafter, "Walsh") for the work. Walsh in turn subcontracted the steel work to Carlo Steel Corporation (hereinafter, "Carlo"). Carlo in turn sub-subbed some of the steel work to Danny's Construction Company (hereinafter, "Danny's) and several other contractors. During the course of construction Danny's incurred extra costs due to problems arising from the work of other sub-subcontractors of Carlo. In addition to not being

paid for the extra work, starting in March, Carlo discontinued making monthly progress payments as required under its subcontract with Danny's. This was apparently due to the fact that Walsh had stopped making progress payments to Carlo.

As a result of the forgoing, a series of letters was exchanged between the parties. The first letter was one sent by Danny's to Carlo on February 8, 2005 requesting payment for some of the extra work it had performed, noting that the payment was probably not recoverable from Walsh as it was caused by errors made by another Carlo subcontractor. There was no indication that Carlo answered the letter or otherwise disputed its assertions. Subsequent to this date, Carlo missed making Danny's progress payment that was due. There is no indication that Carlo disputed the fact that the payment was, in fact, due and owing, perhaps because Walsh had offered to pay Carlo the money that was due to Danny's for the progress payment. On March 8, Walsh wrote Carlo a letter asking why Carlo had refused to accept the money for Danny's progress payment. Walsh followed up on March 11 specifically requesting that Carlo accept the money for Danny's payment so as to avoid what it termed further job site "delays." The reason Carlo was refusing to accept this payment was because it wanted to be paid for its own work first before any of its subcontractors were paid. On March 13 Danny's notified Carlo that it was claiming that Carlo had materially breached the contract by failing to make progress

payments and to pay for the extra expenses Danny's had incurred. It received no reply from Carlo. However the next day, March 14, Carlo wrote Walsh declaring Walsh to be in default for nonpayment to it and threatening to have itself and all of its subcontractors walk off the job by exercising their "rights as non-defaulting parties." Danny's on that same day wrote Carlo another letter giving notice of the amounts due it and advising that it would suspend work if payment was not received by March 16. On March 16, Danny's extended the cure date to March 17. Carlo did not respond or otherwise dispute the contents of either of Danny's letters, but instead wrote the Chicago Commissioner of Aviation advising that the project was about to come to a complete halt because the subcontractors were being forced by Walsh to subsidize the project and were in jeopardy of "closing its *[sic]* doors" because of cost overruns. On March 17 Walsh wrote Carlo explaining that it would not make any further payments to Carlo until certain issues relating to its contractual work were resolved. Failure to resolve these issues, in Walsh's estimation, left Walsh with an exposure of almost $7 million if not corrected by Carlo. In passing, Walsh noted that Carlo's deficiencies had already cost Danny's approximately $800,000 in extra work. On March 18 Danny's wrote Carlo demanding payment of the sum of $1,077,304 which included the outstanding extra work as well as the missed progress payments. In this letter it again notified Carlo that it would suspend work if

- 3 -

payment was not received. On the same day, March 18, 2005, Carlo wrote Walsh announcing that it and its subs had walked off the job because of Walsh's failure to make timely payments and would not return until all payments due subcontractors were made. On March 25 Walsh prepared a spreadsheet showing that Danny's was projected as being owed $3,673,376 for extra work leaving Walsh with a liability exposure to Danny's of $3,910,231 including the missing progress payment.

On April 18 Danny's sent Carlo a notice of termination for nonpayment of progress payments and for abandonment or suspension of work for an unreasonable period of time. On April 19 Carlo for the first time wrote Danny's advising that the job had been suspended but not abandoned and that Carlo thought that "the EOR was to blame for much of this." In this letter, it did not take issue with any of Danny's work, Danny's payment request which included the extras, or Danny's right to terminate the contract, although Carlo opined that it did not believe "termination was the answer."

Danny's filed suit against Travelers on August 19, seeking to collect payments under Carlo's performance bond. Travelers filed a third-party indemnity claim against Carlo and the City of Chicago. Carlo then filed a Cross-Claim against Danny's for breach of contract and Danny's filed a Counterclaim against Carlo also for breach of contract. The Court granted Danny's Motion to Bifurcate

Danny's bond claim from the rest of the litigation. On January 9, 2007, while this case was pending, Carlo assigned its claims against Danny's to Walsh. Carlo (Walsh) has now filed Motions for Summary Judgment maintaining that as a matter of law it is entitled to judgments in its favor on its claim against Danny's for breach of contract and on Danny's claim against it for breach of contract. Travelers has joined Carlo on both motions.

Carlo's motions claim that Danny's breached the subcontract by (1) stopping work on the project contrary to its terms; (2) failing to give Carlo sufficient notice of work stoppage as required by the contract; (3) wrongfully terminating the contract on April 18, 2005; and (4) failing to give Carlo sufficient notice of such termination as required by the contract.

Its first ground in Carlo's brief is based on its claim that Danny's demand for the payment of $1,069,411 was inflated because, in addition to missed progress payments, it included claims for extras. In its reply brief it expands on this by alleging that the claim for extras was itself excessive. Carlo argues that the suspend work provision of the contract could only be invoked if Carlo had, in fact, received money for the progress payment from Walsh (a so-called "pay-if-paid" clause) which was not the case. Thus, a condition precedent to the right to stop work was not met. Carlo in its reply brief wisely drops this latter argument apparently because the reason it was not paid by Walsh was its

arbitrary refusal to accept money for Danny's progress payment. Therefore, whether the condition precedence was waived by Carlo's own actions is a question of fact. Carlo instead focuses on its claim that Danny's has not established that it was legally owed the approximate $800,000 it was claiming as extras. Thus, the argument goes, by claiming excessive amounts of money from Carlo, Danny's violated the contract which in turn excused Carlo from making the progress payment (a *non sequitur*?). However, the extras amount is a question of fact: if it was not $800,000 how much was it? Was the amount requested in fact excessive? It appears that Walsh did not think $800,000 was excessive because that is the amount it put on its spreadsheet as its potential liability to Danny's if Carlo defaulted. Moreover, this was one of the reasons Walsh gave in its March 17 letter for not paying Carlo. As pointed out by Danny's, Walsh, by virtue of its assignment from Carlo, is now the real party in interest in this proceeding. These admissions by Walsh certainly make it a question of fact as to what Danny's was owed by Carlo at the time it suspended work.

Moreover, although Carlo takes the position that Danny's could only stop work if Carlo failed to make progress payments after 7 day's notice, that is not what the contract says. It says that Danny's could stop work for this reason "and without prejudice to or in addition to any other legal remedies" it might have. Under Illinois law failure to make progress payments is viewed as a

material breach entitling the subcontractor to suspend work even without contractual authorization. *Watson v. Auburn Iron Works, Inc.*, 318 N.E.2d 508, 571 (Ill.App.2nd Dist., 1974). Whether failure to make the payment was a material breach is also a question of fact. In addition, Carlo itself declared a work stoppage on the same day that Danny's indicated it was stopping work. Also, there exists some evidence that work was not actually stopped by Danny's on March 18 but some days later, possibly as late as March 22 which would mean that Danny's complied with the 7-day notice. Thus, the precise time of the stoppage is a question of fact. Also, it is a question of fact whether Carlo's suspension of work amounted to a waiver of its right to demand that Danny's continue to perform the work of the subcontract.

Carlo's second argument: that the attempted contract termination by Danny's was a breach of the subcontract is similarly unavailing. The evidence is that there was a work stoppage in progress that had been declared by Carlo. Thus on April 18 when Danny's sent Carlo the notice of termination the work had been stopped on Carlo's order for about one month. Carlo had advised the Department of Aviation that the project "would come to a complete halt" as of March 17 which was more than 30 days prior to the April 18 notice sent by Danny's to Carlo. There is no indication in the record as to when work would resume. Whether this is an "unreasonable period of time not due to fault or neglect

of Subcontractor" is a question of fact. Carlo claims that the notice was defective because there was not 7 days notice. However, as Danny's points out: this is a "notice of termination" and not necessarily the termination itself. The contract would be terminated 7 days hence or as of April 25, 2004.

Because there are numerous questions of fact concerning the suspension and the termination, and there are questions of fact as to whether the contract was breached by Danny's or Carlo, and whether the breach was material or waived, the Motions for Summary Judgment are denied. Further, the Motions for Summary Judgment on the part of Travelers are also denied for the same reason.

**IT IS SO ORDERED.**

　
　
　
　
　
　
　
　
　
　
Harry D. Leinenweber, Judge
United States District Court

Dated:     July 31, 2007